IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEE L. BROADEN, VI, a minor child, by and through his next friend, Danniell C. Dominic,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>Defendant. | 8:07CV442<br><br><br>MEMORANDUM AND ORDER |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration. The plaintiff, Lee L. Broaden, VI ("Broaden"), through his next of kin, brings this action to review the decision of the Commissioner denying him Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq*. Broaden initially filed an application for Title XVI benefits on or about May 20, 2004. Social Security Transcript ("Tr.") 73-76, Filing No. 11. The initial application was denied on or about November 8, 2004 (Tr. 34-37). The court has jurisdiction to review this matter under 42 U.S.C. § 405(g). Upon careful review of the record, the parties' briefs, and the law, the court concludes that the decision of the Administrative Law Judge ("ALJ") denying benefits is not supported by substantial evidence on the record as a whole. As a result, the Commissioner's decision is reversed.

**I.   BACKGROUND**

    **A.   Factual History**

Broaden is currently a twelve-year-old boy, born March 22, 1997 (Tr. 73). At the time of his application, Broaden was seven years of age (Tr. 73). On September 22, 2004,

Broaden filed an application seeking Title XVI benefits for his severe mental impairments (Tr. 73, 284). Broaden initially alleges an onset date of disability of September 22, 2004, due to Attention Deficit Hyperactivity Disorder and anger problems (Tr. 107, 284).

Broaden has a history of difficulties with sleep disturbance (Tr. 225), stealing from his mother (Tr. 227), peer relations, behavioral outbursts, aggression, agitation, and self-harming behavior at school (Tr. 265). The earliest medical record shows that Broaden presented "out of control behavior" to Children's Physicians on October 15, 2004 (Tr. 225). He was assessed with behavior problems and poor sleep (Tr. 225).

Rosanna Jones-Thurman, Ph.D., a consultative physician, met with Broaden on November 2, 2004 (Tr. 226). At that time, Dr. Jones-Thurman diagnosed Broaden with Adjustment Disorder with Disturbance in Conduct and Emotions; Rule out Attention Deficit Hyperactivity Disorder; and Rule out Asperger's Disorder, and she reasoned that he had a GAF score[1] of 66 (Tr. 230). Upon visiting Dr. Jones-Thurman, Broaden's mother reported that he was aggressive, fought people, and consequently had been involved in numerous altercations in his after-school program (Tr. 227). The doctor noted that Broaden was moody and somewhat "isolative" (Tr. 227), somewhat oppositional, derogatory at times, and "talked like a robot" (Tr. 228). Dr. Jones-Thurman reasoned that Broaden would have some limitations in his ability to relate appropriately with peers, adults, and family members and some limitations in behavioral control (Tr. 229, 232).

---

[1]The Global Assessment of Functioning ("GAF") Scale is a rating system for reporting the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (DSM-IV-TR) 34 (4th ed. 2000). A score of 50 or lower indicates "serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social occupational or school functioning (e.g., no friends, inability to keep job)." *Id.* at 34.

In a letter dated December 28, 2004, Campfire USA (the organization that operates the after-school program at Broaden's school) indicated that Broaden was struggling with peer relations (Tr. 136). On two separate occasions he had lunged at another student with his fists swinging (Tr. 136). Even with staff intervention, Broaden continued to throw punches both at the staff and the student (Tr. 136). Campfire USA reported that Broaden needed "considerable" one-on-one time to calm him down after each incident (Tr. 136).

In April of 2005, Nancy Oberst, Broaden's principal, suspended Broaden for destroying his homework, throwing classroom items, and refusing to cooperate with security (Tr. 198). On May 3, 2005, Warris Walayat, M.D., a treating physician, evaluated Broaden (Tr. 252). Dr. Walayat diagnosed Broaden with Oppositional Defiant Disorder and Mood Disorder, and he assigned Broaden a GAF score of 45 to 55, indicating moderate to serious symptoms (Tr. 253). Broaden was seen on follow-up with Dr. Walayat on May 24, 2005, at which time Dr. Walayat noted Broaden was continuing to have difficulty in school, including pushing desks and chairs and refusing to participate in any scheduled activities (Tr. 250). His mother reported that at home Broaden was running around the house in the middle of the night and unable to sleep (Tr. 250). Broaden was prescribed .25 mg of Risperdal.

In 2005-2006, Broaden met with Brian Obrist, M.S.W., a Provisionally Licensed Medical Health Provider (Tr. 214, 260, 259, 258, 257, 256). On November 28, 2005, Broaden had a difficult day and once again threw chairs at school (Tr. 258). At that time, his mother indicated that she always gave him his medications except on the weekends (Tr. 258). In a letter dated October 31, 2006, Mr. Obrist reported that he had witnessed Broaden's agitated outbursts, including his breathing mucus through his nose and spitting

3

saliva out of his mouth while gritting his teeth and swinging and stomping his feet (Tr. 214). He observed Broaden to exhibit angry behavior which included throwing shoes and closing hallway doors, even with two adults holding the doors open (Tr. 214). Broaden told Mr. Obrist that he heard voices and they told him to do things (Tr. 214). Broaden also reported some self-harm issues such as pinching himself or closing his desk on his hand (Tr. 214). Mr. Obrist concluded that Broaden had "trouble socializing with other students and for them to feel safe to socialize with him" (Tr. 215).

Broaden was then referred to Paul M. Fine, M.D., for a psychiatric evaluation on January 6, 2006 (Tr. 262). At that time, Dr. Fine noted the previously attempted treatment by Dr. Walayat and that the Risperdal was reported to make Broaden's behavior worse (Tr. 262). His mother reported that he was easily insulted, banged his head when he was crossed, had violent episodes of temper, and oftentimes at school he would require the one-on-one attention of at least four adults (Tr. 262). At that time, Broaden was on the honor roll and doing well academically (Tr. 262). During the meeting, Dr. Fine noted that Broaden refused to draw or engage in play, and appeared unhappy, moderately dysphoric, and anxious (Tr. 263). Dr. Fine diagnosed Broaden with Depressive Disorder, Not Otherwise Specified, and assigned him a GAF score of 45-50 (Tr. 263).

In a letter dated January 10, 2006, Broaden's third grade teacher, Linda Vernon, reported that the school had to put into place several behavior modification techniques to control Broaden's behaviors, such as his tendencies toward physical violence, throwing chairs, tipping over desks, throwing books and other school supplies, using profanity toward others, and refusing to work at school (Tr. 181). At that time, Broaden was receiving services from two separate programs: One World and S.A.F.E. (Tr. 181).

Handwritten records from that school year report numerous accounts of Broaden's repeated agitation, angry outbursts, pounding of his head on lockers, refusal to do his work, tipping over desks, use of profanity, withdrawal, and other inappropriate behaviors (Tr. 182-191).

A Multidisciplinary Team Report was prepared in March 2006 (Tr. 172-175). When compared to his same-aged peers, Broaden was not seen as differing in many areas including conduct problems, somatization, attention problems, learning problems, social skills, leadership, and study skills (Tr. 174). There were, however, significant scores in depression and withdrawal as Broaden would not join in activities, refused to talk, played alone, and appeared lonely and sad (Tr. 174). The report concluded that "Lee's behaviors had escalated," regarding his violent episodes of physical violence to objects and persons around him (Tr. 174) (internal quotations omitted).

Psychologist Amy Corey, Ph.D., met with plaintiff on June 6, 2006, in consultation for Nebraska DDS examiner Steven Baltensperger. Broaden appeared uncooperative and detached, punching a chair and banging his head against the wall (Tr. 242). He refused to cooperate at times and when he did cooperate, he exhibited hostility (Tr. 242). His mother reported that Broaden had completed the third grade and made the Honor Roll (Tr. 243). She stated that the Risperdal had caused Broaden to pace and have trouble sleeping (Tr. 244). She also reported that he had taken Wellbutrin for a month, but it was stopped because it made him more aggressive (Tr. 244). She reported that the school asked her to stop giving him the medication because the medication made him more aggressive (Tr. 244). Dr. Corey diagnosed Broaden with a Mood Disorder, Not Otherwise Specified; Disruptive Behaviors Disorder, Not Otherwise Specified; and Rule Out

5

Asperger's Disorder (Tr. 247). She gave Broaden a GAF score of 39 (Tr. 247). She recommended "current feedback from the school . . . to determine the course of his illness." (Tr. 247.) She did not recommend any other course of treatment.

Mrs. Oberst suspended plaintiff in September 2006 and October 2006 for hitting a student several times, shoving two students, and throwing objects (Tr. 223, 216). In a letter dated December 19, 2006 (Tr. 265), Mrs. Oberst reported that Broaden had "many difficult behavioral issues in third grade" (Tr. 265). She reported that the school administered Dr. Walayat's Risperdal prescription from October 20 through November 10 (Tr. 265). Broaden's mother instructed the school to discontinue the medication on that date (Tr. 265). She stated that a new medication was begun on January 24, 2006 (Tr. 265). That day Broaden had problems and his mother had to take him home from school. Broaden's mother discontinued the new medication on January 31, 2006, after Broaden had struck staff and attempted to hurt other children at the school (Tr. 265). Mrs. Oberst noted "marked" improvement in his behavior in March 2006, continuing until the end of the school year (Tr. 265).

At the administrative hearing, consulting physician Stanley Golon, M.D., a medical expert, testified after having Mr. Obrist's October 2006 letter summarized to him (Tr. 326-328). Dr. Golon then concluded that Broaden's impairments included Depressive Disorder, Not Otherwise Specified (considered under list 112.04); Adjustment Disorder (considered under list 112.04); Oppositional Defiance Disorder (considered under list 112.08); and Attention Deficit Hyperactivity Disorder (considered under list 112.02) (Tr. 329-330). Dr. Golon testified that he did not feel that any of the impairments met the level of severity required by a Social Security Listing (Tr. 330). The doctor testified that Broaden

6

had no limitations in acquiring and using information, moving about and manipulating objects, caring for himself, and health and physical well-being (Tr. 331, 334-335). Dr. Golon concluded that attending and completing tasks was less than marked (Tr. 331). The doctor came to a very different conclusion, however, when he was asked to rate how well Broaden could interact and relate with others. In response to that question, Dr. Golon stated that "certainly, [he] think[s] [he] would say extreme." He further opined that he "wouldn't argue with anybody if they wanted to say marked."(Tr. 332-233).

### B. ALJ's Findings

The ALJ concluded that Broaden had not been disabled within the meaning of the Act since September 22, 2004 (Tr. 13). In making this determination, the ALJ first concluded that Broaden had "not engaged in any substantial gainful activity at any time relevant" to the decision (Tr. 16). Next, the ALJ determined that Broaden has the following impairments: Depressive Disorder, Not Otherwise Specified; Adjustment Disorder; Oppositional Defiant Disorder; and Attention Deficit Hyperactivity Disorder (Tr. 16). The ALJ then reasoned that Broaden "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 16). Additionally, she concluded that Broaden does not have "an impairment or combination of impairments that functionally equals the listings" (Tr. 16).

To conclude that Broaden does not have "an impairment or combination of impairments that functionally equals the listings," the ALJ first determined that Broaden did not rate as "severe" in any of the "six domains of functions" found in 20 C.F.R. 416.926(a)(g)-(l). In determining how Broaden rated in the third domain function of

7

"interacting and relating with others," the ALJ only considered the testimony of Dr. Golon, a teacher's report from 2004, Dr. Jones-Thurman's report from 2004, and the school's Multidisciplinary Report from March of 2006 (Tr. 24).  In relying on Dr. Golon's testimony to conclude that Broaden only rated as "marked" and not "severe" in this area, the ALJ noted that Dr. Golon had testified that the "'the family is making a big mistake' by not adhering to recommended treatment" (Tr. 24).

Overall, the ALJ did note the numerous incidents of depression, violence, stealing, and social isolation that the record indicates Broaden has repeatedly displayed over the last several years (Tr. 17).  The ALJ also considered numerous reports from different teachers and doctors, all of whom had cared for Broaden during the applicable time period (Tr. 17-21).  The ALJ, however, discounted the mother's testimony because "the claimant's mother is not adhering to recommended treatment" (Tr. 17).  If the ALJ had other reasons for discrediting the mother's testimony, she did not include them in the record.

## II.  STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo*.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995).  Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision.  *Harris,* 45 F.3d at 1193.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001).  The court must consider evidence that both detracts from,

as well as supports, the Commissioner's decision. *Id.*; *Morse v. Shalala,* 16 F.3d 865, 870 (8th Cir. 1994). As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

## III. DISCUSSION

### A. Law

#### 1. *Three-step Sequential Process for Minors*

The Social Security Administration has promulgated guidelines to determine whether a minor-claimant qualifies for disability benefits. 20 C.F.R. § 416.924; *Pepper ex rel. Gardner v. Barnhart,* 342 F.3d 853, 854 (8th Cir. 2003). Pursuant to these guidelines, the ALJ employs a three-step sequential test to determine the validity of the alleged disability. 20 C.F.R. § 416.924(a). The first step requires a determination of whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). The second step requires the ALJ to determine whether the child's impairments are "severe." 20 C.F.R. § 416.924(c). If the child's impairments are not "severe," the third step requires a determination of whether the child's impairments are medically or functionally equal in severity to the listed impairments set forth in the Commissioner's disability regulations. 20 C.F.R. § 404, Subpart P, Appendix 1; 20 C.F.R. § 416.924(d). Notably,

> [u]nder the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). A child's impairment is functionally equal to a listed impairment if there is an "extreme" limitation in one of six specific functional domains, or a "marked" limitation in at least two domains. 20 C.F.R. § 416.926a. Domain analysis considers the child's age-appropriate functioning in relation to: acquiring and using information,

> attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being. 20 C.F.R. § 416.926a(a)(1)(i)-(vi).

*Pepper*, 342 F.3d at 854. Furthermore, the ALJ may

> find functional equivalency to a listed impairment if a child has an extreme limitation in at least one functional domain, or "marked" limitations in at least two such domains. *Id.* An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). "'[E]xtreme limitation' does not necessarily mean a total lack or loss of ability to function. It is the equivalent functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."

*Scales v. Barnhart*, 363 F.3d 699, 703-04 (8th Cir. 2004).

### 2. *The Third Domain Function: Interacting and Relating With Others*

The Social Security Administration has defined "social functioning" as "a child's capacity to form and maintaining relationships with parents, other adults, and peers. Social functioning includes the ability to get along with others (e.g., family members, neighborhood friends, classmates, teachers)." 20 C.F.R. § 404, Subpt. P, App. 1, § 112.00(C)(2)(b). Thus the analogous "interacting and relating with others" third domain function of § 416.926a "consider[s] how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). "The regulations expect that adolescents, among other things, will be able to develop friendships with children their own age; relate appropriately to other children and to adults; solve problems; express feeling; and tell stories." *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 654 (8th Cir. 2004).

### *3. Discrediting the Credibility of Third Parties*

The Eighth Circuit Court of Appeals has outlined the analysis the ALJ must undergo before discrediting the credibility of a third party who testifies in support of the plaintiff's disability. Thus, the *Polaski* standard is the guide for credibility determinations:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1986).

Furthermore, an ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints. *Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). This duty is fulfilled when an ALJ acknowledges the *Polaski* factors, and the ALJ has clearly acknowledged the factors before discounting the

claimant's testimony. *Id.* at 972. An ALJ, however, is "not required to discuss methodically each *Polaski* consideration." *Id.*

Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record. Ruling 96-7p provides that the ALJ must consider such factors as:

> * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
>
> * The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e). . . . However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.
>
> * The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *5 (July 2, 1996).[2]

---

[2] Social Security Ruling 96-7p is entitled: "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements."

#### 4. *ALJ's Duty to Fully Develop the Record*

Ultimately, it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. *Sims v. Apfel,* 530 U.S. 103, 111 (2000) (noting that "Social Security proceedings are inquisitorial rather than adversarial."). It is well settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004) ("[T]he ALJ possesses no interest in denying benefits and must act neutrally in developing the record."). The duty to develop the record extends to cases where the claimant is represented by counsel. *Id.* The ALJ's duty to develop the record in a social security hearing may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *Smith v. Barnhart,* 435 F.3d 926, 930 (8th Cir. 2006); *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone).

### B. Statement of Issues

In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g). Consequently, the issues presented for this court concern whether the final decision of the Commissioner is consistent with the Social Security Act, policy, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole.

Broaden asserts that the ALJ's Findings 4 and 5 are not supported by substantial evidence in the record, where the ALJ concluded that Broaden "does not have an

13

impairment or combination of impairments that meets or medically equals one of the listed impairments" and that Broaden "does not have an impairment or combination of impairments that functionally equals the listings." (Tr. 16).  Specifically, Broaden contends that the ALJ erred at the third step in the sequential process, where the ALJ determined that Broaden is not severely limited under the third domain function (Interacting and Relating with Others) and therefore does not have an impairment that "functionally equals the listings."

Broaden maintains that the ALJ committed error by failing to take Dr. Golon's assessment of his disability into consideration.  Furthermore, Broaden avers that the ALJ improperly dismissed the mother's testimony based on her alleged failure to follow the prescribed treatment for Broaden.  Broaden argues that the ALJ erred when she discredited the testimony of and evidence offered by Broaden's mother without conducting a proper and thorough *Polaski* analysis.  Finally, Broaden asserts that the ALJ improperly failed to consider the opinions of various third parties whose testimony supports Broaden's disability claim.

### C.  Analysis

Upon careful review of the record, the parties' briefs, and the law, the court concludes that the ALJ's decision denying benefits is not supported by substantial evidence on the record as a whole.  Specifically, the ALJ erred when she concluded that Broaden did not qualify as disabled because she rated him as "marked" and not "severe" under the third domain function categorized as "Interacting and Relating with Others" (Tr. 23-25).

### 1. *Dr. Golon's Testimony*

The ALJ erred when she relied on Dr. Golon's testimony to conclude that Broaden has only a "marked," and not a "severe," limitation under the third domain function (Interacting and Relating with Others). Broaden's assertion, however, that "the testimony of Dr. Golon . . . was not mentioned by the Administration in the ALJ's decision" (Plaintiff's Brief at 8, Filing No. 13) is incorrect. The ALJ did mention Dr. Golon's testimony at the administrative hearing in her final decision (Tr. 24), although his testimony does not support the ALJ's final decision. At the administrative hearing, Dr. Golon was directly asked his opinion as to whether Broaden qualified and he answered in the negative (Tr. 330).

At the hearing, the ALJ instructed Dr. Golon to explain how he rates Broaden under each domain function and to answer: "no limitation, less than marked, marked, or extreme." (Tr. 331.) When asked how he would rate the third domain function, Dr. Golon responded:

> I certainly, I think I would say extreme. Very difficult to get a time report of how often they're happening. The mother's testifying that he's doing some agitation once or twice a week. Certainly, the degree of problems at school where he's throwing desks, making suicidal statements, threatening other students, hitting other students. You know, I believe (INAUDIBLE) the extreme. It's very difficult to say over time, I wouldn't, I wouldn't argue with anybody if they wanted to say marked. . . . But in terms of the preponderance of the evidence, it just seems like there's an awful lot of behavioral problems particularly with that last letter you read from the licensed health professional [referencing the October 2006 letter from Mr. Obrist].

(Tr. 332-33.) Dr. Golon goes on to say that he would not argue with "anybody if they wanted to say marked" (Tr. 333). Dr. Golon's testimony that Broaden's ability to interact with others in the third domain is classified as "extreme" (i.e., severe), in combination with

the substantial evidence in the record on the whole, demonstrates that Broaden has a "functional equivalency to a listed impairment." *Scales*, 363 F.3d at 703-04.

Furthermore, the court concludes that the low GAF findings by consulting psychologist Dr. Corey (39), coupled with similarly low GAF findings by treating psychologists Dr. Walayad (45-50) and Dr. Fine (45-50), directly contradict the ALJ's findings that Broaden is not severely limited in the third domain. These low Axis V GAF findings support the plaintiff's contention that his third domain condition is severe, and not merely marked. Scores below 50 represent serious impairments.[3]

Even more concerning is that the lowest of these GAF scores is by an expert retained by the defendant, Dr. Corey, and is the most recent evaluation. In addition, Dr. Golon's evaluation is based only on a review of the record and listening to the testimony given during the administrative hearing. His testimony that Broaden's third domain function is "extreme[,]" but that he would not argue with a "marked" determination, in conjunction with the low and recent GAF score of 39 as found by Dr. Corey, undermines the reasonableness of the ALJ's ultimate conclusion denying disability.

Consequently, the court finds that the substantial evidence on the record does not support the ALJ's determination that Broaden is only markedly limited in the third domain. Instead, the court concludes that the substantial evidence on the whole overwhelmingly demonstrates that Broaden is severely limited in the third domain and, consequently, entitled to disability benefits.

---

[3] A score of 50 or lower indicates "serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social occupational or school functioning (e.g., no friends, inability to keep job)." American Psychiatric Association *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).

### 2. *Mother's Testimony*

The ALJ noted in her final decision that:

> [the] evidence does not substantiate the claimant's mother's testimony that Dr. Walayat had told her to stop Risperdal, the school said he should not be on that medication and maybe no medication at all (which conflicts with her statement to Dr. Fine that the school was 'insisting that Lee get medication' (Exhibit 8F/4)), or that the school found problems with Wellbutrin.

(Tr. 25.) The record certainly implies that the claimant's mother discontinued medical therapy against medical advice. However, the record provides no support for the mother's failure to follow medical advice. She expresses her dissatisfaction with her doctors but provides no medical testimony to support discontinuation of such treatment. The ALJ's opinion appears to be based upon consulting physician Dr. Golon's testimony that the claimant's mother is not following recommended medical therapy (Tr. 334).

The ALJ considered this issue in her finding: "It is noted that, in spite of the alleged severity of the claimant's problem, the claimant's mother is not adhering to recommended treatment." (Tr. 17-18.) Yet before an ALJ may deny a claimant "benefits because of a failure to follow a prescribed course of treatment[,] an inquiry must be conducted into the circumstances surrounding the failure and a determination must be made on the basis of evidence in the record whether quitting will restore [plaintiff's] ability to work or sufficiently improve his condition." *Burnside v. Apfel,* 223 F.3d 840, 844 (8th Cir. 2000)(internal citations omitted). No evidence exists in the record to support a determination that the lack of following a particular recommended treatment made the claimant worse or, in the alternative, that following a particular recommended treatment would have improved claimant's condition.

17

The mother's testimony that she alone determined that Broaden does not need further medication may support Dr. Golon's opinion. However, the medical record does not reflect that any physician or treatment provider prescribed psychotropic medication for Broaden after his apparent adverse reaction to the medication on January 24, 2006. The mother testified that Broaden was not treated by a psychiatrist after that date and that she took him off the medication. She told Broaden's therapist, Mr. Scott Nelson, that she took Broaden off the medication and that she expected Mr. Nelson to inform Broaden's psychiatrist, Dr. Fine, that the medication was discontinued (Tr. 310-312). She also decided that Broaden did not need further treatment from Dr. Fine and that he would obtain sufficient treatment from One World Community Health Centers' therapist Brian Obrist (Tr. 313-315 and 206, 212).

Finally, Dr. Corey, the last psychiatrist to evaluate Broaden, did not find that he needed psychotropic medication. She also made no findings that Broaden needed further psychiatric therapy other than the therapy provided in the school.

Although the claimant's mother, in the words of Dr. Golon, is "making a big mistake" by failing to obtain psychiatric medical treatment for her son, the record does not support a finding that Broaden failed to follow medical advice. As such, his claim is not barred. "[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Ia. 2000). The court determines that the record overwhelmingly supports a finding of disability. Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

## IV. CONCLUSION

Because the evidence upon which the ALJ has based her decision is not supported by the record, the court hereby reverses the Commissioner's finding that the claimant is not disabled under Section 1614(a)(3)(C) of the Social Security Act, as amended.

IT IS ORDERED:

1. The decision of the Commissioner is reversed;

2. Plaintiff's appeal is granted;

3. The Commissioner is directed to award the plaintiff benefits in full; and

4. A separate Judgment will be issued in conjunction with this Memorandum and Order.

DATED this 31st day of March, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge